UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MICHAEL MOLINA** | **CIVIL ACTION** |
| **VERSUS** | **NO. 06-0940** |
| **N. BURL CAIN, WARDEN** | **SECTION "A"(6)** |

## REPORT AND RECOMMENDATION

This matter was referred to the United States Magistrate Judge for the purpose of conducting hearings, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. For the reasons set forth below, it is recommended that the instant petition be **DENIED WITH PREJUDICE**.

## I. PROCEDURAL HISTORY

Petitioner, Michael Molina, is a state prisoner currently incarcerated in the Louisiana State Penitentiary, Angola, Louisiana. In October, 2001, petitioner was charged by bill of information with the following charges: 1) Conspiracy to commit armed robbery; 2) armed robbery; 3) simple burglary of an inhabited dwelling; 4) aggravated burglary;

5) unauthorized entry of an inhabited dwelling; and, 6) theft of an automobile valued at over $500.00.[1]  On October 25, 2001, petitioner entered a plea of not guilty.[2]  On June 6, 2002, petitioner filed a motion to appoint a sanity commission to determine his competency to stand trial.[3]  Pursuant to said motion, a sanity hearing was held on July 24, 2002.[4]  Following said hearing, 24th Judicial District Court Judge Greg Guidry determined that petitioner was competent to stand trial.  On December 17, 2002, trial proceedings commenced.  However, after the jury was selected, petitioner withdrew his plea of not guilty and entered a plea of guilty to the charges of conspiracy to commit armed robbery and armed robbery.  In exchange for his guilty plea, the State dismissed the charges of simple burglary of an inhabited dwelling, aggravated burglary, unauthorized entry of an inhabited dwelling, and theft of an automobile valued at over $500.00.[5]  On that same date, petitioner was sentenced,

---

[1]A copy of the pertinent bill of information is contained in the State rec., vol. 1 of 5.

[2]A copy of court minutes regarding petitioner's October 25, 2001 arraignment are contained in State rec., vol. 1 of 5.

[3]A copy of the pertinent motion is contained in the State rec., vol. 1 of 5.

[4]A transcript of the July 24, 2002 sanity hearing is contained in the State rec., vol. 4 of 5.

[5]A copy of the pertinent court minutes, reflecting the December 17, 2002 commencement of trial proceedings and petitioner's plea change from not guilty to guilty, is contained in the State rec., vol. 1 of 5.

in connection with his plea of guilty to the charges of conspiracy to commit armed robbery and armed robbery, to two, concurrently-running 40-year sentences.[6]

In August, 2003, petitioner filed with the state district court an application for post-conviction relief.[7] Petitioner's efforts in this regard culminated on February 3, 2006, when the Louisiana Supreme Court denied his writ application. *State ex rel. Molina v. State*, 922 So.2d 1161 (La. 2006).

In the instant application for federal habeas corpus relief, petitioner attacks the constitutionality of his plea of guilty based upon the following: 1) The trial court's failure to adequately assess his competency to proceed; 2) the fact that, on the date he pled guilty, he had an unclear "frame of mind" due to his high blood sugar level, undue pressure was exerted upon him by the assistant district attorney and his parents to plead guilty and he was not adequately apprised of the essential elements of the charges to which he was pleading guilty; and, 3) the fact that he received ineffective assistance of counsel.[8] The State, in its

---

[6] A copy of the court minutes reflecting petitioner's December 17, 2002 plea of guilty to the charges of conspiracy to commit armed robbery and armed robbery, along with his sentencing, is contained in the State rec., vol. 1 of 5. A copy of petitioner's December 17, 2002 *Boykin* transcript is contained in the State rec., vol. 4 of 5.

[7] A copy of petitioner's post-conviction application is contained in the State rec., vol. 2 of 5.

[8] With respect to his third claim, petitioner specifically alleges that he was denied "effective assistance of trial counsel as well as appellate counsel." *See* Federal rec., doc. 1, petitioner's supporting memorandum at pp. v and 18. However, petitioner did not appeal his conspiracy to commit armed robbery and armed robbery convictions arising from his December 17, 2002 guilty plea and, therefore, he had no "appellate" counsel. Further, in neither his supporting memorandum (rec. doc. 1) nor his traverse (rec. doc. 4), does petitioner make any argument supporting a claim

Response, concedes that petitioner has exhausted his state court remedies as required under *Rose v. Lundy*, 455 U.S. 509, 102 S. Ct. 1198, 71 L. Ed. 2d 379 (1982), and that the instant petition is timely.[9]

## II.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") includes a comprehensive overhaul of federal habeas corpus legislation, including 28 U.S.C. § 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law where there has been an adjudication on the merits in State court proceedings.

State court determinations of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference unless they were "contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States."  *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).  The United States Supreme Court has advised that:

> Under the "contrary to" clause, a federal habeas corpus court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

---

that he was denied effective assistance of appellate counsel.

[9]*See* Federal rec., doc. 3, State's Response at pp. 6 and 10.

4

*Williams v. Taylor*, 529 U.S. 1056, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000); *Hill*, 210 F.3d at 485. Questions of fact found by the state court are "presumed to be correct ... and we will give deference to the state court's decision unless it `was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Hill*, 210 F.3d at 485, *quoting* 28 U.S.C.§ 2254(d)(2).

### III. ANALYSIS

**A. Trial Court's Failure to Adequately Assess His Competency to Proceed**

Petitioner challenges the constitutionality of his guilty plea based upon his assertion that the trial court failed to adequately assess his mental competency. Petitioner's claim in this regard is not based upon the trial court's failure to conduct a hearing to determine his mental competency. The pertinent record clearly reflects that such a hearing was conducted on July 24, 2002. Instead, petitioner bases his argument on the fact that the trial judge, at the July 24, 2002 sanity hearing, did not ask any questions regarding petitioner's sanity, relying on the sanity commission's report, along with the sanity hearing testimony, to ascertain whether petitioner was competent to proceed.[10]

The United States Supreme Court has provided that when the issue of a defendant's mental competence arises, sufficient inquiry must be made as to the defendant's capacity to understand the nature and object of the proceedings against him and to consult

---

[10]*See* Federal rec., doc. 1, petitioner's supporting memorandum at p. 8.

with and assist his attorney. *Drope v. Missouri*, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). In accordance with the above requirement, the State of Louisiana has set forth, under La.C.Cr.P. Arts. 643-647, certain procedures which must be followed in determining a defendant's mental competence. These procedures include the appointment of a sanity commission, the submission of a report from the sanity commission, and the determination of competency via a hearing. With regard to the competency hearing, La.C.Cr.P. Art. 647 provides, in pertinent part, that "[t]he report of the sanity commission is admissible in evidence at the hearing, and members of the sanity commission may be called as witnesses by the court, the defense, or the district attorney." In accordance therewith, a trial court, in making its competency determination, may rely on the sanity commission's report, along with the hearing testimony of commission members, but with the understanding that the determination as to mental competency is ultimately a legal one, to be made by the court rather than based solely upon a conclusory commission report and/or a commission member's hearing testimony devoid of supporting substantive findings. *State v. Bennett*, 345 So.2d 1129, 1137-1138 (La. 1977).

   A review of the transcript from petitioner's July 24, 2002 sanity hearing reflects that Dr. Richard Richoux, a forensic psychiatrist, along with Dr. Raphael Salcedo, a forensic psychologist, examined petitioner on June 26, 2002, to determine whether he was suffering from a mental defect and whether he had the ability to understand the legal

proceedings and assist counsel in his defense.[11] Dr. Richoux testified that based upon their examination, both he and Dr. Salcedo concluded that petitioner did understand the legal proceedings with which he was presently involved and was capable of assisting his counsel. With regard to their specific findings, Dr. Richoux testified that while petitioner, at the time of their examination, "was manifesting some depression", said depression "did not rise to psychotic proportions". Further, Dr. Richoux informed that the commission's examination of petitioner revealed that he "was not out of touch with reality", "was not hallucinating", and "was not delusional."[12]

The pertinent commission report corroborates Dr. Richoux's testimony, providing that petitioner was a nonpsychotic 38 year old male in no acute distress.[13] Further, the report reflects that while petitioner appeared to be "moderately dysthmic", i.e., "moderately depressed", he "did not appear to be suffering from any cognitive limitations, certainly nothing along the lines of Mild Mental Retardation".

Based upon the above specific findings, 24th Judicial District Court Judge Greg Guidry determined that petitioner was "competent to proceed to trial", was "able to

---

[11]*See* State rec., vol. 4 of 5, July 24, 2002 competency hearing transcript at pp. 4-5.

[12]*See* State rec., vol. 4 of 5, July 24, 2002 sanity hearing transcript at p. 6.

[13]A copy of the report, in the form of a letter to the court from Dr. Salcedo, is attached to the State's Response (rec. doc. 3) as Exhibit A. While the letter reads that petitioner was a "nonpsychotic 38 year old male in on [sic] acute distress", Dr. Richoux, during his hearing testimony (p.7), explained that the letter contained a "typo", that "on" should be "no".

7

understand the charges pending against him", and was "able to assist in his defense".[14] Judge Guidry, in making this determination, did not run afoul of the Constitution. Sufficient inquiry, as required under *Drope* and *Pate*, *supra*, was clearly made with respect to petitioner's mental competence despite the fact that Judge Guidry did not personally ask questions at the pertinent hearing. Accordingly, the instant claim for habeas corpus relief is without merit.

### B. Unclear Frame of Mine, Undue Pressure and Inadequately Apprised of Charges

Petitioner argues that his December 17, 2002 guilty plea was not voluntary because: 1) His blood sugar level was too high and therefore, his thinking was clouded; 2) undue pressure was exerted upon him by the assistant district attorney and his parents to plead guilty; and, 3) he was not adequately apprised of the charges to which he was pleading guilty. In support of his claim that his mind was unclear due to his high blood sugar level and that he did not understand the charges to which he was pleading guilty, petitioner offers nothing more than his self-serving statements to this effect,[15] along with his assertion that Dr. Richoux's July 24, 2002 testimony, that it generally takes an "extremely elevated" blood sugar level, "in the range of 400 to 500", to adversely affect a person's "mental status",[16] is

---

[14]*See* State court rec., vol. 4 of 5, sanity hearing transcript at p. 12.

[15]*See* Federal rec., doc. 1, petitioner's supporting memorandum at pp. 14-16.

[16]*See* State rec., vol. 4 of 5, sanity hearing transcript at p. 10.

8

"erroneous."[17]  In support of his claim that he was unduly pressured into pleading guilty, petitioner asserts that his parents, at the urging of the assistant district attorney and outside the presence of his counsel, implored him to plead guilty, stating that his parents "began to cry and beg[ged] [him] to take the plea bargain offer".[18]  Petitioner also submits affidavits, copies of which are attached to his memorandum, from his parents and a friend who was present in court on December 17, 2002, which corroborate his assertions regarding the pressure exerted upon him by his parents, along with the assistant district attorney, to plead guilty.

 The above allegations, that he did not have a clear mind, that he was unduly pressured, and that he was not adequately advised of the charges, are not supported by the transcript of petitioner's December 17, 2002 guilty plea proceeding.  As the state district court noted, in addressing petitioner's allegations in connection with his post-conviction application, the pertinent *Boykin* transcript reveals the following dialogue:

> **Q.  Are you suffering from any physical or mental impairments that would affect your competency to enter this plea?**
>
> **A.  No, sir.**
>
> Q.  Are you able to read, write and understand the English language?
>
> A.  Yes, sir.

---

[17]*See* Federal rec., doc. 4, petitioner's traverse at p. 3.

[18]*See* Federal rec., doc. 1, petitioner's supporting memorandum at pp. 12-13.

> Q. Are you satisfied with the way that your attorney and the Court have handled your case?
>
> A. Yes, sir.
>
> **Q. Have you in any way been forced, coerced or threatened to enter this guilty plea?**
>
> **A. No, sir.** [Emphasis added.][19]

Additionally, the state district court observed that "[t]he trial court ... advised the defendant of the nature of the charges he was pleading to in this case."[20] A review of the *Boykin* transcript reflects the following colloquy:

> Q. Okay, Mr. Molina, your attorney has indicated to me your intention to withdraw your earlier plea of not guilty and enter a plea of guilty at this time to counts one and two of the bill of information against you charging you with armed robbery and conspiracy to commit armed robbery in violation of La. R.S. 14:64, 14:26:64; is that correct?
>
> A. Yes, sir.
>
> **Q. And do you understand the charges pending against you?**
>
> **A. Yes, sir.** [Emphasis added.][21]

Further, contrary to petitioner's assertion that he advised, in response to the pressure being asserted upon him to plead guilty, that "he was not guilty" and he "wanted ... his day in

---

[19]*See* State rec., vol. 4 of 5, March 9, 2005 Order from 24th Judicial District Court Judge Charles Cusimano at p. 3 and December 17, 2002 *Boykin* transcript at p. 6.

[20]*See* State rec., vol. 4 of 5, March 9, 2005 Order at p. 3.

[21]*See* State rec., vol. 4 of 5, December 17, 2002 *Boykin* transcript at pp. 4-5.

court"[22], the state district court noted, and a review of the *Boykin* transcript confirms, that petitioner never "expressed his desire to proceed to trial or made any claim of his innocence."[23]

Petitioner, by virtue of his December 17, 2002 attestations that he was not suffering from any physical or mental impairment, he had not been forced or coerced into pleading guilty, and he understood the charges to which he was pleading guilty, is not absolutely barred from challenging, on habeas review, the voluntariness of his guilty plea, but does, in connection with his habeas claim, have a heavy burden of proof. *See United States v. Diaz*, 733 F.2d 371, 373-374 (5th Cir. 1984) (quotation omitted) ("attestation of voluntariness" at plea hearing is not "absolute bar" to habeas challenge based upon alleged involuntariness of guilty plea, but imposes upon petitioner a "heavy burden" of proof). Petitioner must show that his plea was "'so much the product of ... misunderstanding, duress, or misrepresentation by others as to make the guilty plea a constitutionally inadequate basis for imprisonment.'" *Diaz*. 733 F.2d at 374, *quoting Blackledge v. Allison*, 431 U.S. 63, 75, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977).

Clearly, the "evidence", described above, submitted by petitioner in support of his challenge to the voluntariness of this guilty plea, falls woefully short of meeting his

---

[22]*See* Federal rec., doc. 1, petitioner's supporting memorandum at p. 15.

[23]*See* State rec., vol. 4 of 5, March 9, 2005 Order at p. 3.

heavy burden of proof, as set forth in *Diaz* and *Blackledge*, *supra*. Accordingly, the instant claim for habeas corpus relief is without merit.

### C. Ineffective Assistance of Counsel

Petitioner argues that he received ineffective assistance of counsel. According to petitioner, counsel failed to ensure, in connection with his sanity hearing, that state law, specifically, La.C.Cr.P. Arts. 642-647, was followed. Further, petitioner contends that counsel erred in allowing Dr. Richoux to be a part of the sanity commission since Dr. Richoux "was not neutral and detached"; in allowing Drs. Richoux and Salcedo to perform a "joint interview" and submit a "joint evaluation report"; and in not objecting to the fact that only Dr. Richoux testified at the July, 2002 sanity hearing even though petitioner was interviewed by both Drs. Richoux and Salcedo and both prepared the evaluation report. Petitioner also contends that counsel was ineffective in that he "failed to become actively involved in the plea negotiation process", offering "no alternatives to the guilty plea" and not inquiring "whether petitioner was coherent and realized what he was doing by entering a guilty plea."[24]

The seminal Supreme Court decision regarding ineffective assistance of counsel is *Strickland v. Washington*, 466 U.S. 668, 697, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674 (1984), wherein the Court held that in order to prove that counsel was unconstitutionally

---

[24]*See* Federal rec., doc. 1, petitioner's supporting memorandum at pp. 20-21.

12

ineffective, petitioner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense.  If a court finds that petitioner has made an insufficient showing as to either one of the two prongs of inquiry, it may dispose of the claim without addressing the other prong.

Under the deficient performance prong of the *Strickland* test, "it is necessary to 'judge...counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart v. Fretwell*, 506 U.S. 364, 371, 113 S.Ct. 838, 844, 122 L.Ed. 2d 180 (1993), *citing Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066.  To prove prejudice under the *Strickland* standard, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.  In the context of a guilty plea, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985).

Petitioner lodges a generalized attack on counsel's performance in connection with his guilty plea, saying that counsel "failed to become actively involved" in plea negotiations and suggested "no alternatives" to the offered plea agreement.  However, petitioner fails to set forth how he was prejudiced by these alleged deficiencies. Specifically, petitioner does not show a reasonable probability that if counsel had taken a more active role

in plea negotiations, he would not have entered into the plea agreement. As the state district court observed, in addressing the instant claim on post-conviction, counsel, in connection with the pertinent plea negotiations, "obtained a plea agreement significantly reducing petitioner's incarceration exposure. Instead of risking a maximum sentence of ninety-nine (99) years imprisonment, defendant was able to obtain a forty (40) year sentence on counts one (1) and two (2) to run concurrently with each other." Further, as a result of the plea agreement, "[t]he State dismissed counts four (4) through seven (7)."[25]

As for counsel's failure to inquire into whether petitioner "was coherent and realized what he was doing", as this court earlier observed, the trial court, before accepting petitioner's plea, specifically asked whether he was suffering from any impairment which would affect his competency to enter into a plea agreement and petitioner responded in the negative. This fact, coupled with the lighter sentence petitioner received by virtue of the plea agreement, leads the court to conclude that counsel had no basis upon which to question whether or not petitioner knew what he was doing. Thus, counsel's action, or inaction, in this regard, cannot be considered a deficiency, as required under *Strickland*, *supra*.

Petitioner's challenge to counsel's performance in connection with his competency determination is also without merit. Petitioner condemns the fact that counsel allowed Dr. Richoux to be a part of his sanity commission, allowed Drs. Richoux and

---

[25] *See* State rec., vol. 4 of 5, March 9, 2005 Order at p. 4.

14

Salcedo to perform a "joint interview" and prepare a "joint evaluation report", and did not insist that Dr. Salcedo, along with Dr. Richoux, offer testimony at his sanity hearing. However, petitioner fails to set forth how he was prejudiced by these deficiencies by providing, for example, the specific basis for his assertion that a different medical expert, other than Dr. Richoux, would have made a difference with respect to the ultimate finding that he was competent to proceed, or how Dr. Salcedo's testimony at the competency hearing would have changed the hearing's outcome. Accordingly, the court finds that petitioner has failed to satisfy his burden of proof, as set forth under *Strickland*, *supra*, to support his ineffective assistance of counsel claim.

## RECOMMENDATION

It is therefore **RECOMMENDED** that the application for federal habeas corpus relief filed on behalf of petitioner, Michael Molina, be **DENIED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such

consequences will result from a failure to object. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this __9th__ day of _____November_____, 2007.

_____
LOUIS MOORE, JR.
United States Magistrate Judge